## ARGUED AND DETERMINED IN THE

# SUPREME COURT

### OF THE

# STATE OF LOUISIANA.

Eastern District.
*March*, 1830.

DAQUIN & AL.
*vs.*
COIRON & AL.

Under the provision of the old code, the possessor was not necessarily in bad faith from the time suit was commenced; but he owed fruits from the judicial demand.

The party cited in warranty has a right to receive the money which the plaintiff is directed to pay before he can recover possession, in case it is shown the defendant had not paid the purchase money.

When the plaintiff recovers but is directed to pay a sum of money

*DAQUIN & AL. vs COIRON & AL.*

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This is an action in which heirs have sued, to obtain restitution of property descending to them from their ancestors, which was sold contrary to law. The legality of the alienation was examined when the case was last before us, and the plaintiffs pretentions were declared to be well founded. The cause was remanded for inquiry into the value of the improvements, and the fruits. *See vol.* 6, 674.

It now returns to us with a mass of evidence taken on these points, and a judgment of the court so unfavorable to the pe-

titioners, and the defendant, to their legal rights, that they have both appealed from it.

The property, from the time it was first sold, passed through various hands, before it came into possession of the defendant Coiron. The respective vendors cited each other in warranty, in the order in which the sales had been made, but in the court below, as here, the case has been contested by the party, (Millaudon) who sold to the person now in possession; and in the conflicting interests which have grown out of the respective situations of the parties, the warrantor is found opposing the plaintiffs claim against the defendants, and contesting the defendants demand to be paid for ameliorations.

By law, the owner who evicts a *bona fide* possessor, has the choice, either to pay him the value of the materials and workmanship employed in putting improvements on the property, or to reimburse him the enhanced value which they confer on it. That privilege was exercised in this instance by the plaintiffs, and they chose the latter alternative.

before he can enter on the premises, a certain time will be fixed for the payment thereof, and in default of his doing so, execution may issue against him.

When the interest is a legal consequence of the debt, a demand for the principal, is a demand for the principal and interest.

The court below, considered that the property had been increased in value, in the sum of $24,750, from which it deducted the fruits made since the decision in this tribunal, annulling the defendant's title.—These fruits the judge estimated at $5136. To the balance remaining after deducting the latter from the former amount, he added $19,583, which had been paid by the original purchaser, in discharge of a debt due by the ancestor of the petitioners, and directed these sums to be paid by them before they took possession.

The court further considered, that as the mortgage existing on the plantation had been discharged by the warrantor, and not by the defendant in possession, the plaintiffs must pay its amount to the former, with interest at 5 per cent. from the date of the judgment in this court, in relation to the title; but that the enhanced value should be paid to the latter. In default of these payments being made within two months, the judgment authorised execution to be issued against the plaintiffs. The costs were directed to be paid equally by the petitioners and the defendant.

The claims of the plaintiffs, and defendant, who are both appellants, as against Millaudon, who is cited in warranty, require a distinct and separate consideration. We shall first take up those of the petitioners.

They complain of the judgment below, on the following grounds.

1. The mode of ascertaining the enhanced value of the land in litigation, adopted by the judge *a quo*, is correct and equitable, but the judge's calculations are erroneous, and the estimate of the improvements on the premises, far from being underrated, is beyond the real amount of the said enhanced value.

2. The plaintiffs are allowed a share in the revenue, or crops of the plantation, only from the date of the judgment declaring the defendant's title null, when by law they are entitled to fruits from the institution of this suit. *C. Code*, 103, *art.* 7, 481, *art.* 30.

3. Admitting that the plaintiffs can claim fruits from the date of the judgment only, viz. from the 31st of December, 1827, they are entitled to a share in the crop of 1827, or such part thereof as was gathered after the 31st of December 1827. And moreover, there

should be a clause in the judgment, reserving to the plaintiffs, the right of claiming by a further action, their share in the crop made on the plantation, from and after the date of the latter judgment, namely, in the crop of 1829, until they take possession of the premises.

4. No interest is to be allowed to the defendants, because they claimed none in their answer, and because the sum to be paid to them was not liquidated. And if any interest be allowed, it must be only from the date of the latter judgment, viz., from the 6th of July, 1829, and not from the date of the former judgment, of 31st of December. 1827, when the amount to be paid to the plaintiffs was unliquidated. *Code of Practice*, 553.

5. No execution, as contemplated by the judge *a quo*, can issue against the plaintiffs, unless they take possession of the premises; at all events, too brief a delay was allowed to the plaintiffs.

6. Costs ought not to be divided, but must be borne by the defendant.

I. The judge of the first instance, finding it impossible to reconcile the testimony of the witnesses introduced by the plaintiffs and

warrantor, respectively, and believing them all equally entitled to credit, added together the whole amount of their estimations of the value of the land in 1812, and the present time; and dividing the sum obtained from the addition, by the number sworn, adopted the product as the real value of the property, at the two epochs just mentioned. His decision is complained of by both parties. The appellants think he adopted the true mode of reaching the truth, but contend he erred in his calculations. The appellee denies the correctness of the course pursued by him, and insists that proof should be weighed, not counted. Of the truth of the last observation, there can be no doubt, but the difficulty in this case, is, to obtain any satisfactory result from weighing it. We have balanced it repeatedly, and are free to confess we find it impossible. A number of the witnesses on each side, appear equally respectable; their means of information about the same; their integrity unimpeached. And yet their conclusions are utterly variant and contradictory. Without, therefore, adopting the mode resorted to by the judge, to arrive at the result obtained by him, we are of opinion that we

could make no decision in the case which, if it did not almost entirely disregard the evidence on one side or other, would be freer from objection, than that which the judge *a quo*, has come to. Admitting his calculations to be erroneous, and they are not materially so, the conclusion appears to us a fair medium of the opposite and conflicting proof exhibited. If there be a preponderance in the proof on either side, it is in favor of the warrantor, and the difference between the amount allowed by the judgment, and that which would be obtained by a calculation, allowing the same weight to the testimony of all the witnesses, is not so great as to authorise us to make any change in the decision of the court below.

II. The second ground contests the correctness of the judgment, in relation to the time from which the defendant was condemned to account for the fruits. If the judge of the first instance has erred in this respect, it is an error into which he has fallen with this court, as the point in question was decided in the case of *Donaldson & al.* vs. *Dorsey's Syndics.* 7, 376. A single decision, however, on any question, cannot be consid-

ered as settling the jurisprudence in relation to it, and we have examined the subject again, as if it was presented to us for the first time.

The argument at the bar extended not only to the doctrine respecting fruits, but to that in regard to improvements which might be placed on the soil by a possessor, who was evicted in virtue of a superior title.

In the case of *Packwood* vs. *Richardson*, we decided, that a possessor in good faith, did not necessarily cease to be so, by the commencement of a suit for the property possessed. We came to that conclusion on the provision of the old Civil Code, which declares, that a person who had entered upon property with a just title, and who is a *bona fide* possessor, ceases to be one, from the moment the defects are made known to him in the title under which he holds. We thought, that knowledge of an adverse title, was not in every instance, knowledge it was a better one, and that until such knowledge was communicated to the possessor, the defects of his own title *were not known* to him; and we supposed ourselves fortified in this construction, by a reference to commentators on the Napol-

DAQUIN & AL.
*vs.*
COIRON & AL.

eon Code, the provisions of which on this subject, are *verbatim* ours.

The authorities cited by the court in that case, we still think sustain the ground assumed by us. It is true a passage from another part of Toullier's works seems to countenance a contrary doctrine, and decisions have been made in some of the tribunals of France, giving a different construction to the law, from that which this court considered the true one. We leave to others the task of reconciling the opinions which may exist in that country. It is possible we may have misunderstood those cited when the subject first came under our consideration. But if we did, it does not follow we have erred in the construction given to our law. Such a consequence could only result from these decisions and opinions being of binding authority in this state. As they are not, the correctness of our opinion must be tested by reason and common sense, which ought to have, and we trust do possess, more authority within these walls, than the doctrine of any jurist, ancient or modern. Great respect is due to the opinions of enlightened men and learned tribunals of any country. In cases where the

understanding of the court is in suspense, or doubt, they may well give it a direction; but when the judges who compose this tribunal, have a clear and perfect conviction of their own, on a legal question, they would fail in their duty to express that conviction, although others may consider it wrong, because it is opposed to great names, and foreign opinions. 1 *n. s.* 409. *Toullier's Droit Civil Francais, vol.* 3, *no.* 76. *vol.* 4, 332, *no.* 313. *Pothier's traite de propiete no.* 342 (*Ed.* 1807) *in notis. Jurisprudence du code civil, vol.* 3 *page* 64. *Denever's Journal de la cour de cassation, vol.* 11 *p.* 207.

The article of our code already referred to, declares the good faith of him who has entered into possession under a just title, to cease so, soon as the defects in his title *are made known to him.* The first question which this law presents, is, what is meant by the expressions, *made known to him.* Taken literally, they may mean either certain knowledge of the defects, or mere notice, that others consider them to exist. Construed in relation to the subject matter, they must be understood in the former sense. For, as good faith consists in the belief of a just title, a pos-

session *animo domini*; bad faith can only arise on the destruction of that belief. The next question is, whether the commencement of a suit always makes these defects known; whether it produces a conviction in the mind of the possessor, that his title is bad, and his adversary's good? The law has not said it shall, therefore there is no technical bad faith created by the action being commenced. In point of fact, such conviction is not produced on the mind of the possessor, in all cases. In the greater number, we believe he honestly thinks he has a better title than the party to whom he is opposed, up to the very moment when judgment is pronounced by the tribunal, which decides in the last resort.— This belief of ours, we imagine, will be shared by all those who have had any experience of the motives which operate on men's minds in defence of their rights, real or imaginary. Independent of the delusions of self-love, there are cases where the coolest and most unbiassed mind might fall into error. Facts may be essential to a correct understanding of the case, which are never known until the testimony is heard on the trial, and never can be known before it. The

law may be so unsettled and uncertain, that the counsel who advise, may well draw different conclusions from the judges who decide. So that under the interpretation contended for, cases might occur, where the party who entered into possession *bona fide,* would be advised by his counsel, he had the better title; where the court which tried it in the first instance thought so; where even this court might think so; and on an application for a rehearing, change its opinion; and yet during all this time, while this general delusion prevails as to the validity of his pretensions, the possessor is to be considered in bad faith, because he did not know the law better than his counsel who advised—the judge who tried his cause in the inferior court, and because he shared, for a time, with the tribunal, in the last resort, a conviction, that he had a better title than his adversary.

A conclusion which is so contrary to reason and an acquaintance with the affairs of men, never could have been adopted in any country, if a positive rule had not existed in it, that good faith should cease with the commencement of a suit. The minds of men who live long under regulations of almost any

DAQUIN & AL.
*vs.*
COIRON & AL.

kind, naturally come to consider them founded in reason and truth, and the bias, which habits of thought thus produce, insensibly extends itself to the examination of every question arising out of a change in these rules.—With the destruction of the rule, however, we think all argument derived from it should cease.

We still, therefore, remain satisfied, that according to the provisions of the old code, bad faith was made to depend on an investigation of all the circumstances of each case, and not on the particular period the possessor received notice his title was contested.—And in the three several cases in which we applied this doctrine to the right of the defendant, to be paid for improvements, we do not believe any error was committed. 1, 409, 7 ibid. 376 : 650.

But in relation to the right of enjoying fruits, the legialature has thought proper to make a special provision. By the 30th article of the old code, p. 480, it is provided, that all which are reaped *after demand*, shall be restored to the party recovering possession.

There is perhaps a sound reason for this

distinction. In the case of improvements

placed on the soil, the owner is enriched by the money expended by the possessor; the property is increased in value. But where fruits are reaped, he is benefitted. In the case of eviction, then he presents himself in first hypothesis, *damno evitando*—in the latter, *lucro captando.* The equity arising from these different positions, is by no means the same. *The* 39*th and* 41*st laws of the title of the* 3*d Partidas*, seem to recognize a rule of the same kind. By them, the defendant was to pay the fruits gathered, after issue joined. But no limitation is affixed in respect to his right to be paid for improvements.

We conclude, therefore, that the plaintiffs are entitled to claim the fruits from the institution of the suit.

III. The third point will be noticed, when we proceed to examine the facts of the case, and apply the law to them. The fourth relates to the interest allowed by the judgment.

It is objected, that it was not claimed in the answer, and that it was allowed on a sum not liquidated.

DAQUIN & AL.
*vs.*
COIRON & AL.

The 553d article of the Code of Practice, declares that interest shall not be allowed by the judgment, unless the same has been expressly claimed, and then only in cases in which the law permits such interest to be stipulated.

We do not understand this provision to apply to cases, where the interest is a legal consequence of the obligation, on which suit is brought. It was made, as the last clause of the article shows, for those cases where the payment of interest was stipulated, and where interest could not be given without that stipulation. In such cases, where the petition, or claim in reconvention, as the case may be, only asks for an execution of part of the contract, the judgment cannot go beyond the demand in the pleadings.

But where the interest due, is a legal consequence of the debt, without any stipulation, a demand for the principal, is a demand of both principal and interest; the one necessarily follows the other. The amount claimed here was sufficiently liquidated, and we do not see, that in this part of the judgment, any error was committed.

The property which the plaintiffs had recovered, was sold to pay a debt of their ancestors; and the judgment of the inferior court directed that money to be repaid, before they took possession of the premises, together with the increased value of the plantation. In default of these payments being made in two months, the decree authorised execution to issue against the plaintiffs.

They complain of this, and admitting the correctness of the principle, they contend the time allowed for them to make payment was too short, that a greater delay should have been granted.

The question presented to the court by this objection, is quite novel. The plaintiffs, who have sued for the premises, and who have obtained judgment for them, certainly cannot expect the defendant should remain their tenant at will, for years, liable to be evicted at any moment they choose. If he is deprived of the land, and its free enjoyment, by a judgment which they have provoked, he has as much right to receive the money decreed to him in consequence of that judgment, as they have to get possession of the plantation. His demand in the answer,

Daquin & al.
*vs.*
Coiron & al.

was one in reconvention; it is the very instance put in the code of practice to illustrate this species of action, (article 375.) We think the principle on which the judge decided correct; but the judgment requires some modification. The plaintiffs have no right to the premises, until they make a tender of the money The defendant, or warrantor, has no right to the money until the property is tendered to the plaintiffs.

According to the estimation of the court, of the first instance which we adopt, the increased value of the property is $ 24,750. From this must be deducted the fruits reaped since the inception of the suit. It was commenced in Dec. 1826, and there are the crops of two years accounted for. The judge below considered, that as the plaintiffs had furnished the land and buildings, with some slaves; and the defendant, slaves, animals and plantation utensils, and superintended the whole, that each should take one half of the nett product. We think the judge did not err by so deciding; it appears equitable, and is supported by the evidence given on the trial. The crops of the two years already stated, amount to $ 24,342,46-100, to

the half of which $ 12,171,23-100, the plaintiffs are entitled.   This deducted from $ 24,-750, leaves  $  12,578,77-100, which they must pay before they can  take possession of the premises.

They must also pay the sum arising out of the original sale of the plantation, which was appropriated to the discharge of their ancestors' debts.   The amount is contested.   The warrantor, Millaudon, insists it is $ 23,500. The plaintiffs say it is only 19,583.   This difference arises from a  payment made by Dufau, who  was  surety for the ancestors of the plaintiffs, in the contract with  Evans. Dufau, who was  examined, states that he paid  this amount out of  his own funds, and that Daquin afterwards repaid him a certain sum: he could not  recollect how much. It is clear, therefore, the whole sum of $23,-500 is not due.   Nor do  we think any  part of this payment can be  claimed by the defendants.   The money was  paid by Dufau, as surety of the Daquins, before the land was decreed to  him, in  consequence of his purchase in the name of Massicot.   It is  only those who have purchased in consequence of a sale made to discharge the ancestor's debts,

that can demand repayment from the minors. Now the sale made on the demand of Evans, was not for $ 23,500, but for the sum allowed by the judge. That sum the plaintiffs must repay, with interest at five per cent. from the commencement of the suit.

By the judgment of the court of the first instance, this sum was directed to be paid to Millaudon, who was cited in warranty, and the balance due for the improvements was decreed to the defendant, Coiron. The latter has appealed, and has contended that the whole amount is due to him; that if Millaudon should be considered as representing the previous purchasers, he represents all the rights which Millaudon had.

As a general rule this is perhaps correct. *Prima facie*, the money should be paid to the possessor. But if he abandons the defence as he did here, throws it on his warrantor, and asks for judgment against him for all damages which arise out of the eviction; it is open to the warrantor to show, that the party in possession is indebted to him, in a larger amount than that for which the judgment is demanded. The plaintiff's right to receive the money, which the original pur-

chaser paid in discharge of the plaintiff's ancestor's debts, depends not only on having bought the property, but having paid for it. He has no right to be reimbursed money, which he has not expended.

The case was argued before us, as between the defendant and his warrantor. But no judgment was given in the court below, on the issue formed between them; and when this cause was last before us, we gave as one reason why he could not render a final judgment, that the rights of the vendors, cited respectively in warranty, had not been passed on. It is clear we cannot decide a case between parties in this tribunal, on whose conflicting claims, no judgment has been rendered in the inferior court. We must either affirm or reverse, and we could do neither here.

The greatest difficulty we feel in remanding the cause, is created by the situation in which the plaintiffs are placed. They should not be deprived of the possession of their property, during the period the defendant and his warrantor are settling their pretensions to the money which the petitioners are compelled to pay, one or other. We think the in-

DAQUIN & AL.
*vs.*
COIRON & AL.

terests of all will be best preserved by permitting the plaintiffs to obtain possession, on depositing the money in court; and in case they do not do so, to reserve to the defendant and his warrantor, the right to enforce payment, so soon as it is decided which of them is entitled to the money.

It is therefore ordered, adjudged and decreed, that the judgment of the district court, be annulled, avoided and reversed, and it is further ordered adjudged and decreed, that the plaintiffs do recover of the defendants, the property claimed in the petition; but that before entering on, or taking out a writ of possession for the same, they deposit in the hands of the clerk of the district court, the sum of thirty-two thousand one hundred and sixty one dollars, 77-100, with interest at five per cent. on the sum of $ 19,583, from the 13th December, 1826. Reserving, however, to the defendant, I. Coiron, and the warrantor Laurent Millandon, the right to enforce payment of the same, on a final decision of the cause, in case the plaintiffs previous thereto, do not pay the said sum into court.

And it is further ordered, adjudged and decreed, that this case, so far as it respects

the rights of the vendor, cited in warranty, be remanded for further proceedings, and that the appellee pay the costs of this appeal.

*Quemper* for the plaintiffs, *Denis and Mazureau* for the defendants